IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **HENDRICKS LAW FIRM PC**, an Oregon corporation, and **HEATHER A. BRANN PC**, an Oregon corporation,<br><br>Plaintiffs,<br><br>v.<br><br>**PEGGY S. FORAKER**; **MCKENZIE LEIGH FORAKER**, as trustee of the Gren Trust; **PEGGY S. FORAKER**, as trustee of The Foraker Family Trust, a revocable living trust; **THE FORAKER FAMILY TRUST**; and **THE GREN TRUST**,<br><br>Defendants. | Case No. 3:23-cv-1150-SI<br><br>**OPINION AND ORDER** |

Christopher L. Cauble, CAUBLE & WHITTINGTON LLP, 111 SE Sixth Street, P.O. Box 398, Grants Pass, OR 97528; and Kellie A. Furr, CAUBLE & WHITTINGTON, LLP, 1205 NW 25th Avenue, Portland, OR 97210. Of Attorneys for Plaintiffs.

Steven F. Cade, SUSSMAN SHANK LLP, 1000 SW Broadway, Suite 1400, Portland, OR 97205. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

      Hendricks Law Firm, PC and Heather A. Brann PC ("Plaintiffs") sue Peggy S. Foraker ("Foraker"), McKenzie L. Foraker, the Foraker Family Trust ("Foraker Trust"), and the Gren Trust (collectively, "Defendants"). Plaintiffs are attorneys who previously represented Foraker in

PAGE 1 – OPINION AND ORDER

a coverage dispute against her former insurer. They ultimately recovered about $4 million, including damages and attorney's fees. Plaintiffs kept about $3 million as fees and costs, and Foraker kept about $1 million. In a separate state court action, Foraker disputed this distribution, but the state court issued a series of summary judgment decisions in Plaintiffs' favor. The state court entered a general judgment on March 7, 2023, and, on May 4, 2023, ordered that Plaintiffs would be awarded attorney's fees of more than $756,000. The state court issued a supplemental judgment to that effect on May 16, 2023. Foraker appealed to the Oregon Court of Appeals, and that appeal has not yet been decided.

In this federal case, Plaintiffs assert a claim against Defendants for violating Oregon's Uniform Fraudulent Transfer Act ("UFTA"), Oregon Revised Statutes ("ORS") §§ 95.200-95.310 (1985) (amended effective January 1, 2024).[1] Plaintiffs ask the Court to grant them a judgment lien on the transferred real property located in Oregon ("Oregon Property"). Before the Court are the parties' cross-motions for summary judgment on Plaintiffs' first claim for relief. Plaintiffs argue that there is no disputed issue of material fact that Defendants transferred the Oregon Property to the Gren Trust in violation of the UFTA. Defendants argue that there is no disputed issue of material fact that the transfer of property from the Foraker Trust to the Gren Trust was a valid transfer of legal title and cannot be voided under Oregon's UFTA. For the reasons discussed below, the Court finds that there is a disputed issue of fact regarding whether

---

[1] Oregon's UFTA was amended effective January 1, 2024. 2023 Or. Laws Ch. 83 (H.B. 2330). Under the amendment, it is now called the "Uniform Voidable Transactions Act." *Id.* The amendments do not apply to transfers before the effective date. *See id.* § 14(1)(b) (stating that amendments to ORS §§ 95.200-95.310 "[d]o not apply to a transfer made or obligation incurred before the effective date of this 2023 Act"). There is no dispute that the transfer at issue in this case occurred on or about May 10, 2023, before the effective date. ECF 10 at 120-21. Thus, this Opinion and Order cites to ORS §§ 95.200-95.310 before the January 2024, amendments.

PAGE 2 – OPINION AND ORDER

the Oregon Property was transferred in exchange for reasonably equivalent value. Thus, the Court grants in part Plaintiffs' motion for summary judgment and denies Defendants' motion for summary judgment.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see also Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting *Celotex*, 477 U.S. at 325)). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "If the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

The Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing

of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson*, 477 U.S. at 252, 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Further, Rule 56(g) states: "If the court does not grant all the relief requested by the motion, it may enter an order stating *any material fact*—including an item of damages or other relief—that is not genuinely in dispute *and treating the fact as established* in the case." Fed. R. Civ. P. 56(g) (emphases added). As explained by the 2010 Advisory Committee, "the court may decide whether to apply the summary-judgment standard to dispose of a material fact that is not genuinely in dispute." Fed. R. Civ. P. 56(g) advisory committee's note to 2010 amendment. Finally,

> [e]ven if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established. The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event.

*Id.*

"When cross-motions for summary judgment are at issue, [courts] evaluate 'each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences.'" *Zabriskie v. Fed. Nat'l Mortg. Ass'n*, 940 F.3d 1022, 1026 (9th Cir. 2019) (quoting *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006)); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las*

of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson*, 477 U.S. at 252, 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Further, Rule 56(g) states: "If the court does not grant all the relief requested by the motion, it may enter an order stating *any material fact*—including an item of damages or other relief—that is not genuinely in dispute *and treating the fact as established* in the case." Fed. R. Civ. P. 56(g) (emphases added). As explained by the 2010 Advisory Committee, "the court may decide whether to apply the summary-judgment standard to dispose of a material fact that is not genuinely in dispute." Fed. R. Civ. P. 56(g) advisory committee's note to 2010 amendment. Finally,

> [e]ven if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established. The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event.

*Id.*

"When cross-motions for summary judgment are at issue, [courts] evaluate 'each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences.'" *Zabriskie v. Fed. Nat'l Mortg. Ass'n*, 940 F.3d 1022, 1026 (9th Cir. 2019) (quoting *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006)); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las*

*Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita*, 475 U.S. at 586.

## BACKGROUND

The transfer at issue in this case involves two trusts, the Foraker Trust and the Gren Trust. The Foraker Trust is an Oregon revocable trust formed on October 20, 2016. ECF 27-1 at 4. Foraker is the Foraker Trust's settlor and trustee. *Id.* The Gren Trust is a Virginia irrevocable trust formed on May 10, 2023. ECF 76 at 13. McKenzie Foraker is the Gren Trust's trustee. *Id.* Foraker is the Gren Trust's grantor and lifetime beneficiary, and Foraker's daughters, McKenzie Foraker and Channing Marie Anderson, are the remainder beneficiaries of the Gren Trust. *Id.*

The debt at issue in this case arose from an Oregon state court judgment granting Plaintiffs attorney's fees of more than $756,000. ECF 10 at 90-94 (Ex. 7). On May 4, 2023, the state court ordered that Plaintiffs would be awarded attorney's fees. *Id.* at 79-89 (Ex. 6). On May 9th, the parties agreed on the form of supplemental judgment. *Id.* at 3 (¶ 9); 93-94. The state court entered judgment on May 16th. *Id.* at 92.

On May 10, 2023, McKenzie Foraker, as trustee of the Gren Trust, entered into a "purchase and sale contract" with Foraker, as trustee of the Foraker Trust, to purchase the Oregon Property from the Foraker Trust ("Property Sale Contract"). ECF 17-1. The terms of the Property Sale Contract provide that the Gren Trust will purchase the Oregon Property for

$495,000. *Id.* at 1. The Property Sale Contract specifies that payment will be an "all cash offer" and that "[n]o loan or financing of any kind is required in order to purchase the [Oregon] Property." *Id.* The payment terms also state that "Buyer shall provide seller written third (3rd) party documentation verifying sufficient funds when received." *Id.* There is no deadline by which the Gren Trust needs to provide payment for the Oregon Property. The terms of the Property Sale Contract also provide that Foraker's sister "retains a right to live rent free" in the Oregon Property "until she no longer seeks to live there." *Id.* at 2.

Foraker formed the Gren Trust on May 10, 2023. ECF 76 at 13-21 (Ex. 18). On the same day, under a Bargain and Sale Deed, Foraker transferred the Oregon Property into the Gren Trust, for stated consideration of "$490,000, and other valuable consideration." ECF 10 at 120-21 (Ex. 11). On the same day, Foraker signed a gift deed transferring another property located in Virginia ("Virginia Property") into the Gren Trust for the "consideration of the mutual love and affection between the parties, and other good and valuable consideration." *Id.* at 113-16 (Ex. 9). The only transfer at issue in this lawsuit concerns the Oregon Property.

As of June 9, 2023, the Gren Trust still had not paid the Foraker Trust for the Oregon Property. *Id.* at 100. Foraker asserts that she expects the Gren Trust to pay the Foraker Trust $490,000 sometime in 2024.[2] *Id.* at 99. Foraker adds that she expects the money to come from a "large sum payout" to McKenzie Foraker from a personal injury lawsuit. *Id.* at 99-100. McKenzie Foraker, however, would receive any such payout as an individual, and she is under no legal obligation to transfer funds into the Gren Trust to pay for the Oregon Property.

---

[2] The terms of the Property Sale Contract provide that the Gren Trust will pay $495,000 for the Oregon Property and the Bargain and Sale Deed states $490,000. On June 9, 2023, at deposition, Foraker stated that she expects to receive $490,000 for the property. ECF 10 at 99.

## DISCUSSION

The facts concerning the transfer of the Oregon Property are largely undisputed. Instead, the parties dispute whether Foraker or the Foraker Trust was the transferor, whether the transfer was for reasonably equivalent value, and whether the transfer created insolvency. Both parties move for summary judgment on Plaintiffs' claims under Oregon's UFTA.

### A. Standards Under Oregon's UFTA

Under Oregon's UFTA, a creditor can show that a "transfer constituted constructive fraud due to inadequate consideration for the property conveyed and the insolvency or near insolvency of the debtor." *Doughty v. Birkholtz*, 156 Or. App. 89, 96 (1998); *see also* ORS §§ 95.230(1)(b), 95.240. Because Oregon's UFTA is based on the uniform statute, Oregon law instructs that it is to be "applied and construed to effectuate its general purpose to make uniform the law" with other states that have adopted the uniform act. ORS § 95.300; *see also Twigg v. Opsahl*, 316 Or. App. 775, 783 (2022) ("Case law from other UFTA jurisdictions is instructive." (citing ORS § 95.300)), *opinion modified in part on reconsideration on other grounds*, 317 Or. App. 815 (2022); *Rowden v. Hogan Woods, LLC*, 306 Or. App. 658, 683-84 (2020) (quoting ORS § 95.300 and extensively reviewing case law in other jurisdictions). Additionally, "fraudulent conveyance doctrine is a flexible principle that looks to substance, rather than form, and protects creditors from any transactions the debtor engages in that have the effect of impairing their rights." *Boyer v. Crown Stock Distrib., Inc.*, 587 F.3d 787, 793 (7th Cir. 2009) (cleaned up).

The relevant version of ORS § 95.230(1)(b) provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: . . . (b) Without receiving a reasonably equivalent value in exchange for the

>transfer or obligation, and the debtor: . . . (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

The relevant version of ORS § 95.240(1) provides:

>A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation.

Although ORS § 95.230 and § 95.240 are similar, there are certain important differences. Among other things, ORS § 95.230(1)(b) "does not require complete insolvency, while ORS § 95.240 does." *Sound Found. v. SCI Fund II, LLC*, 658 F. Supp. 3d 929, 947 (D. Or. 2023).

To show that the sale of the Oregon Property from the Foraker Trust to the Gren Trust was a constructively fraudulent transfer, Plaintiffs must demonstrate the following elements: (1) the transferor was a debtor under Oregon's UFTA; (2) the transferor transferred the Oregon Property for less than a reasonably equivalent value; and (3) the debtor either (a) was insolvent at the time the transferor transferred the Oregon Property or (b) became insolvent or reasonably believed the transferor would become insolvent because of the transfer.

**B. Plaintiffs' Motion for Summary Judgment**

Plaintiffs move for summary judgment under ORS §§ 95.230(b)(1) and 95.240(1). There are several key disputed issues regarding Plaintiffs' motion. The first is whether Foraker as an individual can be considered a transferor of the Oregon Property when it was transferred by the Foraker Trust. The second is whether Foraker is a debtor under Oregon's UFTA. The third is whether the transfer was for a reasonably equivalent value. The fourth and final issue is whether at the time of the transfer the transferor was insolvent or believed or reasonably should have believed that the transferor would become insolvent because of the transfer.

PAGE 8 – OPINION AND ORDER

### 1. Whether Foraker is the Transferor of Property Held by Her Revocable Trust

The parties dispute whether Foraker individually or Foraker Trust is the transferor of the Oregon Property. Under Oregon's UFTA a transfer must be made by a debtor to be constructively fraudulent. *See* ORS §§ 95.230(1)(b), 95.240(1). Plaintiffs argue that Foraker is a transferor under Oregon's UFTA because she had an interest in Foraker Trust's assets, and she transferred those assets to the Gren Trust as Foraker Trust's trustee. Defendants argue that Foraker Trust, not Foraker individually, transferred the Oregon Property, and Foraker Trust's transfers may not be voided under the UFTA because it is not a debtor. Defendants emphasize that Foraker Trust transferred legal title to the Oregon Property and that "Foraker's interest in the property, as the beneficiary of the trust, is not legally cognizable." The Court asked for and received supplemental briefing to address whether a revocable trust is a debtor under Oregon's UFTA when the trust's assets are subject to the claims of its settlor, who also is its trustee. No party has cited a case that directly addresses this issue. Because Foraker is the settlor, trustee, and beneficiary of a revocable trust, the Court deems Foraker, individually, to be the transferor for the purposes of Oregon's UFTA.

The Court looks to the substance of a transfer rather than its form. *See Boyer*, 587 F.3d at 793. Under Oregon's Uniform Trust Code ("UTC"), "[d]uring the lifetime of the settlor, the property of a revocable trust is subject to claims of the settlor's creditors." ORS § 130.315(1)(a). Foraker is the sole settlor of the Foraker Trust. Therefore, all the assets held by the Foraker Trust are subject to claims by Foraker's creditors. *Id.*; *Johnson v. Com. Bank*, 284 Or. 675, 682 (1978) ("Defendants argue, correctly, that creditors can reach the trust only to the extent of the settlor's interest . . . . Therefore, although the transfers by Elmer were void as against his creditors only to the extent of his interest, his interest extended to the entire trust and so plaintiff, a creditor, can reach the assets transferred by him." (cleaned up)).

PAGE 9 – OPINION AND ORDER

Foraker's creditors may reach the trust's assets to the extent of Foraker's interest in them because she was the settlor. *See Johnson*, 284 Or. at 682; ORS § 130.315(1)(a). The commentary to Oregon's UTC provides that "[i]f the trustee has discretion to distribute the entire income and principal to the settlor, the effect of [ORS § 130.315] is to place the settlor's creditors *in the same position as if the trust had not been created*." Valerie J. Vollmar, *The Oregon Uniform Trust Code and Comments*, 42 WILLAMETTE L. REV. 187, 291 (2006) [hereinafter *UTC Comments*] (emphasis added) (publishing the comments prepared by Ms. Vollmar and presented to the House and Senate legislative committees considering enactment of the Oregon UTC); *see also In re Lupton*, 2021 WL 2405401, at *2 (Bankr. D. Or. June 11, 2021) ("As far as the settlor's creditors are concerned, a revocable trust simply doesn't exist, and the assets are treated as if they were the settlor's own property."). By adopting this policy, Oregon's UTC "follows traditional doctrine in providing that a settlor who is also a beneficiary may not use the trust as a shield against the settlor's creditors." *UTC Comments* at 290.

Foraker was the settlor, trustee, and beneficiary of the Foraker Trust at the time the trust transferred the Oregon Property, and her creditors had claims against the trust's assets. In these circumstances, the Court deems Foraker, individually, to be the transferor of the Oregon Property because she controlled the Foraker Trust and had the ability to revoke it. This places Foraker's creditors in the same position as if the trust had not been created for the purposes of voiding fraudulent transfers under Oregon's UFTA. Foraker may not use her revocable trust as a shield to fraudulently transfer assets that are subject to her creditors' claims. *Cf. Jet Parts Eng'g, Inc. v. Quest Aviation Supply, Inc.*, 2015 WL 4523497, at *5 (W.D. Wash. July 27, 2015) (noting that a broad definition of transfer under Washington's version of the UFTA "honor[s] the principle that

the debtor's property constitutes a fund from which creditors may be paid, and the debtor may not frustrate the creditor's right to obtain payment from that fund.").

Accordingly, the Court grants partial summary judgment to Plaintiffs with respect to this issue. The Court finds that Foraker was the transferor of the Oregon Property.

### 2. Whether Foraker is a Debtor under Oregon's UFTA

Foraker individually is a judgment debtor according to the supplemental judgment and money award entered in Oregon state court. ECF 10 at 91-92. She owes Plaintiffs approximately $756,000. *Id.* The Court thus grants partial summary judgment to the Plaintiffs with respect to this issue and finds that Foraker is a debtor under Oregon's UFTA.

### 3. Whether Foraker Received Reasonably Equivalent Value for the Transfer

Oregon's UFTA defines "value," *see* ORS § 95.220, but it does not define "reasonably equivalent value." The "[d]etermination of 'reasonable equivalence' is largely a factual question and latitude is given to the trier of fact." *In re All Terrain, LLC*, 625 B.R. 462, 472 (Bankr. D. Idaho 2020); *see also In re Ozark Rest. Equip. Co.*, 850 F.2d 342, 344 (8th Cir. 1988) ("Whether a transfer is made for a reasonably equivalent value is a question of fact."). Reasonable equivalence is determined as of the time of the transfer. *BFP v. Resol. Trust Corp.*, 511 U.S. 531, 546. "Reasonable equivalence does not require exact equality in value." *In re All Terrain, LLC*, 625 B.R. at 472 (quoting *In re Jordan*, 392 B.R. 428, 442 (Bankr. D. Idaho 2008)). It is sufficient that the value given be "approximately equivalent" or "roughly equivalent." *BFP*, 511 U.S. at 538 n.4.

Plaintiffs make three arguments why the transfer of the Oregon Property to the Gren Trust was not for a reasonably equivalent value. The first is that the Gren Trust did not offer or provide any real value because it gave only an unperformed promise to pay under the Property Sale Contract. The second is that the promises made in the Property Sale Contract are not value

PAGE 11 – OPINION AND ORDER

because the contract is unenforceable. Plaintiffs' third and final argument is that the contract is a sham and not supported with valid consideration.

### a. Unperformed Promise

Under Oregon law,

> [v]alue is given for a transfer or an obligation if in exchange for the transfer or obligation property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

ORS § 95.220(1). Plaintiffs argue that this clause means that reasonably equivalent value does not mean unperformed promises made, period, with the exception of unperformed promises made in the ordinary course of the promisor's business to furnish support to the debtor or another person. Defendants, relying on *Sound Foundation*, argue that the clause only carves out unperformed promises that both are made outside the ordinary course of business and are intended to furnish support to another person.

The Court is persuaded by the reasoning of U.S. District Judge Marco Hernández in *Sound Foundation*. Judge Hernández explained:

> After reviewing the available persuasive authority, the Court concludes that the promissory note from Fund III to Fund II qualifies as value. The language of O.R.S. 95.220(1) mirrors the Uniform Fraudulent Transfer Act ("UFTA") definition of "value." UFTA § 3(a) (Unif. L. Comm'n 1984). The comments to the UFTA provision state that UFTA's definition of "value" was intended to include some unperformed promises. UFTA § 3 cmt. 4. The unperformed promises generally held not to constitute value are promises by an individual to support a parent or other transferor. *Id. See also Bowman v. El Paso CGP Co.*, 431 S.W.3d 781, 786 (Tex. App. 2014) (interpreting analogous provision in Texas law). Thus, the general interpretation of the carveout provision is that unperformed promises are not value as a matter of law where they are both (1) made outside the ordinary course of business and (2) intended to furnish support to another person. The promissory note from Fund III to Fund II does not fall

within this carveout. It was not made to furnish support to another person: it was a promise from one venture capital fund to another.

*Sound Found.*, 658 F. Supp. 3d at 946; *see also* UFTA § 3 cmt 4 (clarifying that "[c]ourts . . . have held unperformed promises to constitute value in a variety of circumstances," but, "a transfer for an unperformed promise by an individual to support a parent or other transferor has generally been held voidable as fraud on creditors of the transferor").

The Court has deemed that Foraker, on behalf of the Foraker Trust, transferred the property to the Gren Trust in consideration of an unperformed promise to pay by the Foraker Trust. McKenzie Foraker is the Trustee of the Gren Trust and the beneficiaries of the Gren Trust are Foraker during her life and her daughters upon her death. McKenzie Foraker as the Trustee of the Gren Trust and the Gren Trust's remainder beneficiaries (Foraker's daughters), however, did not promise to take care of or support Foraker in exchange for the Oregon Property.[3] In other words, although a gift of assets from parent to child ultimately may occur as a result of this transfer, which is what the carveout was concerned with avoiding, the second part of the carveout's requirement, that the gift be in exchange for a promise by the child to support the parent, did not occur. Thus, the unperformed promise does not fall within this carveout.

---

[3] Plaintiffs make a cursory argument that the Gren Trust itself is "supporting" Foraker. This argument is unclear and not explained or supported with any authority. It appears that Plaintiffs are arguing that because Foraker created a trust in which she has access to the assets to support her personal needs, that falls within the carveout as a promise by the trust to support the settlor. Without further evidence or explanation, the Court does not find this argument persuasive.

PAGE 13 – OPINION AND ORDER

### b. Unenforceable Contract

Plaintiffs next argue that the Property Sale Contract is unenforceable because it does not contain any payment due date and there was no new consideration given.[4] Plaintiffs assert that if the contract is unenforceable, it is not reasonably equivalent value. The Court, however, does not find that as a matter of law the contract is unenforceable.

Plaintiffs argue that because the Property Sale Contract does not contain a deadline by which payment is due, it is an unenforceable contract. Defendants respond by citing a provision of Oregon's Uniform Commercial Code and arguing that under Oregon law a promise to pay is payable on demand if no payment date is stated. *See* ORS § 73.0108(1)(b) ("A promise . . . is 'payable on demand' if it . . . [d]oes not state any time of payment."). Plaintiffs did not respond to Defendants' argument in their reply or at oral argument. Thus, Plaintiffs have abandoned this challenge. *See Palmer v. Cognizant Tech. Sols. Corp.*, 2022 WL 18214014, at *31 (C.D. Cal. Oct. 27, 2022) ("Plaintiffs do not respond to this contention in their Reply, which constitutes a concession of that argument."); *Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 857 (N.D. Cal. 2020) (concluding that the party's failure to address counterarguments in reply constituted abandonment of position taken in initial brief). The Court declines to find the contract unenforceable because of the failure to include a payment date.

Plaintiffs also argue that the Property Sale Contract does not contain any new consideration because the Gren Trust already had title to the Oregon Property. Plaintiffs note that the Property Sale Contract, signed May 10th, contains a promise to pay in exchange for the Oregon Property, yet the Bargain and Sale Deed and Gren Trust instrument, which were also

---

[4] Plaintiffs also argue that the contract is unenforceable because it states the purchase price is $495,000, whereas the deed states $490,000, but the Court rejects this argument. The difference is a *de minimis* scrivener's error.

both signed on May 10th, indicate that the trust held title to the Oregon Property on that date. The Bargain and Sale Deed transferred title to the Oregon Property, ECF 10 at 120-21, and the Gren Trust instrument indicates the Oregon Property was held in trust on Schedule A, ECF 76 at 21. Plaintiffs contend that because the Foraker Trust already provided fee simple title to the Oregon Property, there was no further benefit for the Gren Trust to receive, and thus the promise to pay is not consideration for the contract.

The Court rejects this argument. The fact that title was transferred on the same day that the contract was signed does not mean there was a lack of consideration. Indeed, the Gren Trust received the benefit of its bargain, title to the Oregon Property, at or close to the same time it promised to pay. Therefore, the Court does not find as a matter of law that there was no new consideration given to the Gren Trust in exchange for its promise to pay. These instruments were all executed together as part of single transaction.

### c. Sham Contract

Plaintiffs argue that the Property Sale Contact is a sham and thus cannot provide reasonably equivalent value. A contract is a sham if "the parties never intended the written instrument to be a binding agreement." *Kergil v. Cent. Or. Fir Supply Co.*, 213 Or. 186, 189 (1958) (stating that evidence the parties entered into a lease agreement for the purpose of avoiding the payment of taxes and to mislead a third party could show that the parties never intended the written instrument to be a binding agreement); *see also Klimek v. Perisich*, 231 Or. 71, 80 (1962) ("Neither party to a contract may assume that a contract exists if he knows that the other party does not intend what his words or actions may seem to express."). A sham contract is entered into "for the purpose of defrauding or misleading a third party." *Kergil*, 213 Or. at 189. Oregon courts have found that a contract is a sham where there is evidence that parties executed the instrument to deceive a third party and the purported agreement was not the

PAGE 15 – OPINION AND ORDER

result of a meeting of the minds of the parties. *See Roberts v. Maze*, 161 Or. App. 441 (1999); *Story v. Hamaker*, 245 Or. 584 (1967).

Plaintiffs argue that the Property Sale Contract is a sham designed to hinder creditors from executing on the Oregon Property and that Foraker and McKenzie Foraker never intended to be bound by its terms. In support of this position, Plaintiffs point to the absence of a due date for the payment, the lack of any security interest, the inconsistency between the amount due in the contract and the amount listed on the deed, and the fact that no money yet has been paid even though title was promptly transferred.

Additionally, at oral argument Plaintiffs noted that the Foraker's remedy if the Gren Trust defaults on its payment obligations is expressly limited by the Property Sale Contract. The contract contains a liquidated damages clause that provides "liquidated damages in the amount of the [e]arnest [m]oney set forth in Section III" of the contract. ECF 76 at 8. Section III of the Property Sale Contract provides that the Gren Trust will pay $495,000 in cash. As of November 15, 2024, no money had been paid. *Id.* at 4. Plaintiffs assert this means that if the Gren Trust defaults on its promise to pay, the Foraker Trust's remedy would be limited to the amount already paid as "earnest money," which is zero. Plaintiffs argue that this provision dramatically reduces the value of the contractual promise to pay and further shows that the agreement is a sham.

Defendants respond that the Gren Trust's promise to pay was legitimate, enforceable, and reasonably equivalent in value to the Oregon Property. In support of their position, Defendants submitted the declaration from Deana Doney, a real estate agent. *See* ECF 16. Ms. Doney stated that in her opinion the Property Sale Contract "provided reasonably equivalent value" for the Oregon Property. *Id.* ¶ 4. In her declaration, Ms. Doney explains that she reviewed comparable

PAGE 16 – OPINION AND ORDER

properties and opined on the fact that this "private sale saved many expenses for the seller." *Id.* at ¶¶ 5-7. She concludes that "the value of the contract could be substantially lower than 'market value' considered for an open sale . . . and still provide reasonably equivalent value for the property, because of these substantial cost savings. *Id.* ¶ 7. Although Plaintiffs dispute the validity of Ms. Doney's assessment, arguing that she was not aware of the facts of this case and was not qualified to apply the fact to the law, Plaintiffs do not point to evidence in the record to rebut Ms. Doney's opinion.

Defendants also point to McKenzie Foraker's declaration as evidence that McKenzie intends to perform the obligations under the Property Sale Contract. She states, "I intend to contribute the proceeds of [my auto insurance] claim to the Gren Trust, and then to use them to liquidate Gren's contractual obligation to pay for the [Oregon] property." ECF 17 ¶ 4. Foraker also claims that she expects to receive the money from the Gren Trust in 2024 after McKenzie Foraker receives a payout from her personal auto insurance claim. ECF 10 at 99-100. At the hearing, defense counsel represented that Foraker still believes that she will receive payment by the end of this year, 2024.

The Court does not make credibility determinations at summary judgment because such findings are properly left for the factfinder. *See* Fed. R. Civ. P. 56(a); *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017). Based on the evidence supporting both sides' positions, the Court finds there is a disputed issue of material fact concerning whether the Property Sale Contract is a sham and therefore whether the Oregon Property was transferred in exchange for a reasonably equivalent value.

Because there is a disputed issue of material fact regarding whether the contract is a sham, and therefore whether it constitutes a reasonably equivalently value for the Oregon

Property, the Court denies Plaintiffs' motion for partial summary judgment on the issue of reasonably equivalent value. The Court notes, however, that much of the evidence on this issue should be resolved by the end of the year. If the Gren Trust has not paid the Foraker Trust by the end of 2024, as "expected" and as was repeatedly stated under oath, then the validity of the contract and the evidence supporting it will be further cast into suspicion.

### 4. Whether Foraker Meets the Insolvency Requirements

Plaintiffs also argue that Foraker met the insolvency requirement of a constructively fraudulent transfer under ORS §§ 95.230(1)(b) and 95.240(1). To meet this requirement, Plaintiffs must demonstrate either that Foraker "believed or reasonably should have believed that [she] would incur[] debts beyond [her] ability to pay as they become due," ORS § 95.230(1)(b), or that Foraker was insolvent when she made the transfer or the transfer rendered her insolvent, ORS § 95.240. "A debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than all of the debtor's assets. A debtor who is generally not paying debts of the debtor as they become due is presumed to be insolvent." ORS § 95.210(1)-(2). For the purposes of this evaluation, a debtor's "[a]ssets . . . do not include property that has been . . . transferred in a manner making the transfer voidable . . . ." ORS § 95.210(4).

Foraker stated that she could not pay the supplemental judgment on June 9, 2023. ECF 10 at 111. Because she is not paying her debts, she is presumed to be insolvent. Additionally, Plaintiffs have shown that Foraker reasonably should have believed she would incur debts beyond her ability to pay and that the transfer of the Oregon and Virginia Properties rendered her insolvent. Before the transfers of the Oregon and Virginia Properties, Foraker's net worth was estimated to be about $1.4 million. *Id.* at 123. Foraker purchased the Virginia Property for $775,000 in 2021. *Id.* at 117. Foraker valued the Oregon Property at $490,000 in the Bargain and

PAGE 18 – OPINION AND ORDER

Sale Deed, *id.* at 120-21, and $495,000 in the Property Sale Contract, ECF 76 at 4. Thus, relying on Foraker's own valuations, the two properties were worth about $1,265,000.

According to the Oregon state court judgment, Foraker owes Plaintiffs about $756,000. ECF 10 at 92. Foraker's attorneys agreed to the form of judgment on May 9, 2023. ECF 10 at 3, 93-94. On May 10th, when Foraker transferred the Oregon and Virginia Properties, she reasonably should have believed that by transferring assets worth approximately $1,270,000, when her total net worth was approximately $1.4 million, she would not be able to pay the supplemental judgment of $756,000. Thus, she meets the insolvency requirement under ORS § 95.230(1)(b). Further, by transferring the Oregon and Virginia Properties, Foraker's debts became greater than her assets and she became insolvent under ORS § 95.240(1) as well. The Court thus grants Plaintiffs' motion for partial summary judgement with respect to this issue and finds Foraker meets the insolvency requirements under Oregon's UFTA.

### 5. Conclusion

Plaintiffs have met their burden to show that Foraker is a transferor of the property, is a debtor under the relevant versions of ORS §§ 95.230(1)(b) and 95.240(1), and satisfies the insolvency requirements. The Court thus finds these facts established and grants Plaintiffs' partial summary judgment on these issues. Plaintiffs, however, fail to show that as a matter of law the Property Sale Contract is a sham or lacks consideration such that Gren Trust's promise to pay does not constitute a reasonably equivalent value for the Oregon Property. Thus, the Court denies Plaintiffs' motion for complete summary judgment.

### C. Defendants' Cross-Motion

Defendants cross-move for summary judgment under ORS §§ 95.230(b)(1) and 95.240(1). The disputed issues on this motion parallel Plaintiffs' motion. Plaintiffs have shown that Foraker was the transferor and the debtor, and that Foraker meets the insolvency

requirements of Oregon's UFTA. Defendants, therefore, cannot prevail on their motion for summary judgment, and the Court denies Defendants' cross-motion.

Defendants also cross-move on § 95.240(2), an issue about which Plaintiffs did not move.[5] This subsection, however, contains the same insolvency provision as § 95.240(1). Therefore, the Court denies Defendants' cross-motion on this ground.

## CONCLUSION

The Court GRANTS in part and DENIES in part Plaintiffs' renewed motion for summary judgment, ECF 66, as described in this Opinion and Order. The Court DENIES Defendants' cross-motion for summary judgment, ECF 68. A three-day jury trial will commence on February 19, 2025, as previously scheduled. ECF 79.

**IT IS SO ORDERED**.

DATED this 2nd day of December, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

[5] Defendants cite the wrong version of the statute. Defendants cite the current version effective as of January 1, 2024. The version of the statute in effect at the time of the relevant events and governing this dispute provides:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for other than a *present, reasonably equivalent value*, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.

ORS § 95.240(2) (1985) (emphasis added).

PAGE 20 – OPINION AND ORDER